| | | |
|---|---|---|
| STEVEN K. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ADVANCED DIGITAL SOLUTIONS, | ) | |
| LLC, TIM LYVERS, and TODD PULVER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendants Advanced Digital Solutions, LLC's ("ADS"), Tim Lyvers' ("Lyvers"), and Todd Pulver's ("Pulver") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) or, in the alternative, to Transfer Venue pursuant to 28 U.S.C. § 1404 (Doc. 5) and on Plaintiff Steven K. Brown's ("Plaintiff" or "Brown") Motion for Evidentiary Hearing or Limited Discovery (Doc. 9) as to the issue of personal jurisdiction. Plaintiff and Defendants have fully briefed the Court on both motions. (*See* Docs. 6-8; 12-15). Accordingly, the motions are ripe for disposition. For the reasons discussed below: (1) Plaintiff's Motion for Evidentiary Hearing or Limited Discovery (Doc. 9) is **DENIED**; and (2) Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) or, in the alternative, to Transfer Venue pursuant to 28 U.S.C. § 1404 (Doc. 5) is **GRANTED IN PART** and **DENIED IN PART** and this case is **TRANSFERRED** to the District Court for the Southern District of Indiana.

## I.    BACKGROUND

Plaintiff, a North Carolina citizen and resident, was a member of Defendant ADS until November 2015. (Doc. 1-2 (Complaint) at 2-3). As of November 2015, Plaintiff owned

approximately fifteen percent of ADS. Defendants Lyvers (the Chief Executive Officer and Manager of ADS) and Pulver (the Chief Operations Officer of ADS) collectively owned the remaining eighty-five percent of ADS. (Doc. 1-2 at 2; *see also* Docs. 13 at 1; 14 at 1). Defendant ADS is an Indiana Limited Liability Company registered with the North Carolina Secretary of State as a foreign limited liability company. (Doc. 1-2 at 2). Lyvers is a citizen and resident of Kentucky and alleges he has not resided in North Carolina since 2011 while Pulver is a citizen and resident of Nevada, having left North Carolina in October 2016. (Doc. 1-2 at 2; *see* Docs. 13 at 5; 14 at 21).

In November 2015, due to a dispute among the three owners of ADS, Plaintiff and Defendants entered into and executed a confidential settlement and release agreement ("the Agreement"). (*See* Docs. 1-2 at 3; 8-1 at 19-24). The Agreement stipulates that Plaintiff will withdraw as a member of ADS in return for a settlement of $291,300.00, payable in twenty-four monthly installments, as well as a payment of a one percent commission for every five percent mark-up on projects with which Plaintiff was directly involved during his tenure at ADS. (Doc. 1-2 at 3). ADS subsequently made only two payments to Plaintiff, but ceased remittance of further payments in February 2016. (*Id.*).

The Agreement, which serves as the basis for Plaintiff's claims, includes a forum selection clause stating that "the Parties hereby agree that jurisdiction for the resolution of any disputes related to or arising out of the breach or alleged breach of any of the provisions contained in this Agreement shall lie in the state or federal courts in Marion County, Indiana."[1] (Doc. 8-1 at 23). Furthermore, the same paragraph in the Agreement includes a choice-of-law clause designating

---

[1] The federal district court located in Marion County, Indiana, is the United States District Court for the Southern District of Indiana. Therefore, the outcome of *Bartels v. Saber Healthcare Group, LLC*, scheduled for oral argument before the Fourth Circuit on September 13, 2017, has no bearing on the present case. No. 16-2247 (determining the effect of a forum selection clause where the clause selects a county in which there is no federal courthouse).

Indiana law as the law governing the Agreement. (*Id.*). The Agreement also includes an email or telefax execution clause stating that "this Agreement shall not be binding on or constitute evidence of a contract between the Parties until such time as a counterpart of this Agreement has been executed by each Party and a copy thereof delivered via facsimile or email to each Party to this Agreement or its/his counsel." (*Id.* at 23-24).

Plaintiff filed a complaint against Defendants in the General Court of Justice, Superior Court Division for Lincoln County, North Carolina. (Docs. 1 at 1; 1-2). In his complaint, Plaintiff raises claims for Breach of Contract and for Fraudulent Inducement to Enter the Agreement. (Doc. 1-2). Plaintiff demands a jury trial and prays that the Court grant him the following relief: (1) an amount in excess of $25,000.00 from Defendants; (2) a court order rescinding the Agreement; (3) costs including attorney's fees; and (4) any further relief that the Court deems just and proper. (*Id.*). Defendants were all served via certified mail, and timely removed the action to this Court. (Doc. 1). As Plaintiff is diverse from all Defendants and as the remaining payments on the Agreement exceed $75,000.00, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) or, in the alternative, to Transfer Venue pursuant to 28 U.S.C. § 1404. (Docs. 5; 6; 12). Defendants contend that the Court lacks personal jurisdiction over Defendants Lyvers and Pulver because the act of entering into an Agreement with Plaintiff alone is insufficient to confer personal jurisdiction over either Lyvers or Pulver. (Docs. 5; 6 at 3-4; 12-14). Defendants Lyvers and Pulver further argue that, even if personal jurisdiction exists as to them, the forum selection clause included in the Agreement is valid, mandatory, and should be enforced so as to dismiss the action for improper venue or to transfer the action to the Southern District of Indiana. (Doc. 6 at 4-12). Likewise,

Defendant ADS seeks to enforce the forum selection clause with an eye toward dismissal or, in the alternative, a transfer to the Southern District of Indiana. (*Id.*). Plaintiff responded (Doc. 7) and provided an affidavit in support of his response (Doc. 8), arguing that the Court has both general and specific jurisdiction over Defendants Lyvers and Pulver because of their contacts with North Carolina in their capacities as owners of ADS, and also because of Lyvers' and Pulver's participation in the Agreement. (Doc. 7 at 6-11). Further, Plaintiff challenges the validity and applicability of the forum selection clause, arguing that it does not apply to Plaintiff's tort claim for fraudulent inducement, is permissive, and is unreasonable. (Doc. 7 at 11-21).

Plaintiff also filed a Motion for an Evidentiary Hearing or Limited Discovery as to the issue of personal jurisdiction over Defendants Lyvers and Pulver. (Doc. 9). In the motion, Plaintiff restated allegations from his complaint and informed the Court that it has discretion to permit limited discovery, but provided no argument as to why the Court should permit discovery or what specific facts Plaintiff hopes to discover. (*See* Doc. 9). Defendants responded (Doc. 15), asserting previous arguments regarding the Court's lack of personal jurisdiction.

## II. PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY

### A. Standard of Review

In determining a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a court may postpone the decision and permit discovery, determine the motion on the basis of the pleadings and affidavits, or hold an evidentiary hearing. *Rich v. KIS California, Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988). To obtain jurisdictional discovery a "plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant" and "[m]ere conjecture or speculation" is not enough to justify jurisdictional discovery. *Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d 361, 373 (D.D.C. 2015).

B.    Analysis

In his Motion for Evidentiary Hearing or Limited Discovery as to personal jurisdiction (Doc. 9), Plaintiff provides no sufficient reason for this Court to grant his request. Plaintiff merely repeats the allegations listed in his complaint while providing no indication as to what specific information or type of information he hopes to find through jurisdictional discovery. (*See* Doc. 9). In his Motion, Plaintiff's only guiding statement is that "Defendants Lyvers and Pulver . . . each has substantial contacts with North Carolina[,] which include but are not limited to the [Agreement]." (*Id.* at 1).

The Court's review of the record does not reveal any disputes with respect to the facts surrounding the personal jurisdiction issue. Furthermore, in light of the Court's resolution of personal jurisdiction below, jurisdictional discovery is unwarranted. Accordingly, Plaintiff's Motion for Evidentiary Hearing or Limited Discovery (Doc. 9) is **DENIED**.

## III.    PERSONAL JURISDICTION AS TO LYVERS AND PULVER

A.    Standard of Review

In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), "[a] plaintiff bears the burden of proving that the Court has personal jurisdiction over a defendant by a preponderance of the evidence." *Am. Auto. Ins. Co. v. Jacobs*, 2012 WL 5185617, at *4 (W.D.N.C. Sept. 27, 2012) (M.J.) (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir.2005)), *report and recommendation adopted*, 2012 WL 5185614 (W.D.N.C. Oct. 18, 2012). When, as occurs here, a court makes a determination about jurisdiction only from legal memoranda, supporting affidavits and other documents, and allegations from the relevant complaint, a plaintiff need only make a *prima facie* showing of a sufficient jurisdictional basis to survive a jurisdictional challenge. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558

(4th Cir. 2014). In determining whether a plaintiff has met this burden, a court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather*, 773 F.3d at 558 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (court "must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff").

In order for a court to exercise personal jurisdiction over a defendant who is not a resident of the forum state at the time of suit, such jurisdiction must be consistent with (1) the long-arm statute of the state in which the district court sits; and (2) the Due Process Clause of the Fourteenth Amendment. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). The applicable North Carolina long-arm statute is N.C. Gen. Stat. § 1-75.4. "Like those of many other states, North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause. Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citations and internal quotation marks omitted). Therefore, the court must analyze whether jurisdiction over Defendant Lyvers and over Defendant Pulver is consistent with the Due Process Clause of the Fourteenth Amendment.[2] *See id.*

---

[2] Defendant ADS does not assert that it is not subject to personal jurisdiction in North Carolina, and has therefore waived a Fed. R. Civ. P. 12(b)(2) defense. *See* Fed. R. Civ. P. 12(h)(1) (a defense of lack of jurisdiction over the person is waived if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course); *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (finding a personal jurisdiction defense waived where defendants participated in lengthy discovery, filed various motions, and opposed a number of plaintiff's motions before submitting a Rule 12(b)(2) issue to the court). Therefore, the Court constrains its personal jurisdiction analysis to Defendants Lyvers and Pulver.

A plaintiff can rely on either general or specific jurisdiction to establish personal jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Regardless of whether a plaintiff relies on general or specific jurisdiction to assert personal jurisdiction over a defendant, "[f]airness is the touchstone of the jurisdictional inquiry, and the minimum contacts test is premised on the concept that a [defendant] that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co. Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012) (analyzing only specific jurisdiction, but noting that the Constitution requires fairness and minimum contacts regardless of whether plaintiff asserts specific or general jurisdiction).

B.    <u>Analysis</u>

   i.    *General Jurisdiction*

"A court may assert general jurisdiction [over a corporate entity] . . . when [the defendant's] affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. However, when the defendant is an individual and not a corporate entity "the paradigm forum for the exercise of general jurisdiction is the individual's domicile."[3]  564 U.S. at 923-24. Although the United States Supreme Court has not definitively answered whether "the 'continuous and systematic contacts' analysis can be applied to individual defendants, the Supreme Court has strongly implied that it cannot and that domicile is the primary basis for a court's exercise of general personal jurisdiction over an individual defendant." *Carnrick v. Riekes Container Corp.*, 2016 WL 740998, at *2 (D. Colo. Feb. 24, 2016) (citing *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990) ("It

---

[3] Because Lyvers and Pulver have neither consented to personal jurisdiction nor been served with process within North Carolina, the Court need not consider whether general jurisdiction might have been established if they had.

may be that whatever special rule exists permitting continuous and systematic contacts to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations . . . ."); *see Koch v. Pechota*, 2017 WL 3234381, at *3 (D.N.J. July 31, 2017) (expressing same observations as in *Carnrick* and citing *Burnham*)).  It is well established that an individual, legally, has only one domicile, and one of the rights determined by one's domicile is that of being sued under diversity of citizenship jurisdiction.  *Eckerberg v Inter-State Studio & Publishing Co.*, 860 F.3d 1079, 1086 (8th Cir. 2017) ("For purposes of federal jurisdiction, 'domicile' and 'citizenship' are synonymous terms." (citation omitted)); *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).  Therefore, if domicile equates to an individual's state of citizenship for diversity jurisdiction purposes and an individual can have only one domicile, it cannot logically follow that a party can be domiciled in a state different from his state of citizenship in a diversity action.

Plaintiff Brown asserts, and Defendants agree, that Defendants Lyvers and Pulver are not domiciled in North Carolina and were not so domiciled when this action was brought.  (Docs. 1-2; 13; 14) (asserting that Lyvers and Pulver are residents and citizens of Kentucky and Nevada, respectively).  Furthermore, Plaintiff's only argument as to why the Court has general jurisdiction over Lyvers and Pulver revolves around the allegation that they have continuous and systematic contacts with North Carolina, not that North Carolina was either party's residence or domicile at the time Plaintiff commenced this action.  (Doc. 1-2).  Even though Pulver lived in North Carolina just two months prior to Plaintiff's complaint being filed, Plaintiff's assertion that Pulver was a citizen of Nevada at the time Plaintiff commenced this action in state court (which continued at removal to this Court based on diversity) does not allow this Court to find that he is or was domiciled here for purposes of general jurisdiction.  (*See id.*).  Even though Plaintiff does not

allege that Defendant Lyvers lived in North Carolina during any period relevant to the facts giving rise to this dispute, this logic clearly extends to Lyvers as well. (*Id.*). Therefore, if this Court has personal jurisdiction over Defendants Lyvers and Pulver it must be the result of specific jurisdiction, not general jurisdiction. *See Kuhnen v. Remington*, 2016 WL 3619657, at *3 (M.D.N.C. June 29, 2016) ("Here, there is no suggestion that any [individual] defendant is domiciled in North Carolina. To the contrary, the complaint alleges that they are 'citizen(s) and resident(s)' of [other states]. As a result, the court lacks general personal jurisdiction over the defendants in this case.").

ii.    *Specific Jurisdiction*

A court may assert specific jurisdiction over a non-resident defendant. Specific personal jurisdiction must be based on activities that arise out of or relate to the cause of action, and can exist even if a defendant's contacts do not establish general jurisdiction, even under the continuous and systematic approach. *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). In undertaking the specific jurisdiction analysis a court considers the "qualitative nature of each of the defendant's connections to the forum state." *Tire Eng'g*, 682 F.3d at 301. The relationship must arise out of contacts that the "defendant *himself*" creates with the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

The Fourth Circuit has synthesized specific personal jurisdiction into a three-part test in which the court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.

2002)). For specific jurisdiction to be in accordance with due process, a court must find that all three factors of the specific jurisdiction test are satisfied as to each defendant. "If and only if [the court] find[s] that the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the court] move on to a consideration of prongs two and three. . . . If the plaintiff satisfies prongs one and two, prong three comes into play." *Consulting Eng'rs*, 561 F.3d at 278-79. A plaintiff has the burden of making a prima facie showing of specific jurisdiction by satisfying the first two elements. The burden then shifts to the defendant to show that such assertion of personal jurisdiction is not reasonable and fair. *Jacobs v. Stein,* 2017 WL 1017125, at *2 (W.D.N.C. Mar. 15, 2017) (citing *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012)).

The facts construed in the light most favorable to Plaintiff are as follows. All parties agree that Defendants Lyvers and Pulver are citizens and residents of Kentucky and Nevada, respectively. (Docs. 1-2 at 2; 5 at 1; 8 at 3). Lyvers and Pulver are presently the only members of ADS. (Doc. 8 at 2). ADS filed a notice of change of address of its principal office from North Carolina to Kentucky in 2014. (*Id.*). Plaintiff states that both Lyvers and Pulver lived in North Carolina during part of Plaintiff's tenure with ADS (which lasted until November 2015), and that Lyvers moved from North Carolina to Kentucky in either 2013 or 2014. (Doc. 8 at 2). Lyvers and Pulver, purportedly acting on behalf of ADS, secured and guaranteed a loan from Yadkin Bank, a North Carolina financial institution, in March 2015. (Doc. 8 at 3). Regarding the Agreement, Plaintiff alleges that "all negotiations [between ADS, Lyvers, Pulver, and Plaintiff Brown] were conducted by [Plaintiff Brown] from the State of North Carolina." (*Id.* at 3). While negotiations were taking place, Lyvers resided in Kentucky and Pulver resided in North Carolina. (Docs. 8 at 2; 13 at 4). After negotiations concluded, ADS, Lyvers, and Pulver signed the finalized Agreement in Kentucky. (Docs. 8-1 at 24; 13 at 5). Plaintiff was the last party to sign the Agreement, and did

so in North Carolina.  (Doc. 8 at 3).  Lyvers and Pulver benefitted from the Agreement because their membership interests in ADS increased.  (Doc. 8 at 3).  Plaintiff promptly mailed the agreement to Defendants' attorney in Kentucky and, in return, ADS mailed the first two payments under the agreement.  (Doc. 8 at 4).

"The first prong [of the specific jurisdiction test] articulates the minimum contacts requirement of constitutional due process[:] that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).  Plaintiff argues that Defendants Lyvers and Pulver satisfy this prong through their actions directed at North Carolina, which include "conducting the business of ADS" as owners of the company, entering into the Agreement with Plaintiff, and soliciting Plaintiff to join ADS in 2011.  (Doc. 7 at 9-10).  Defendants argue that Lyvers and Pulver are not subject to personal jurisdiction on the grounds that they are members of ADS.  (Doc. 12 at 4-5).  Defendants further argue that the claims in this action do not arise out of Lyvers' and Pulver's personal or individual contacts with North Carolina.  (*Id.* at 5-7).

"Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation."  *Smith v. Dade Behring Holdings, Inc.*, 2007 WL 152119, *3 (W.D.N.C. Jan. 16, 2007) (citation omitted).  Although this may be true, "[i]t is clear that under federal law, the status of a defendant as an employee of a corporation alleged to have acted improperly does not shield him from personal jurisdiction." *Charter Commc'ns VI, LLC v. Eleazer*, 398 F. Supp. 2d 502, 505 (S.D.W. Va. 2005) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984); *ePlus Tech, Inc. v. Aboud*, 313 F.3d 166, 177 (4th Cir. 2002)). "Rather, '[e]ach defendant's contacts with the forum [s]tate must be assessed individually." 398 F. Supp. 2d at 505 (citing *Calder*, 465 U.S. at 790).  Furthermore, "[i]n the

Fourth Circuit, to the extent that a forum state's long-arm statute is 'coextensive with the full reach of due process,' fiduciary shield [defenses] are . . . unavailable."[4]  *Id.* (citing *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987)).  Therefore, the proper inquiry for this Court is whether Defendants Lyvers and Pulver—in whatever role they may have occupied—have the requisite individual minimum contacts with North Carolina, based on the extent to which each purposefully availed himself to the privilege of conducting activities within the State.  *See Crutchfield v. Immunoscience, Inc.*, 2009 WL 10664815 at *9-*12 (M.D.N.C. Feb. 9, 2009) (M.J.), *report and recommendation adopted by*, 2009 WL 10664816 (M.D.N.C. Aug. 31, 2009).

Plaintiff cites *Acosta v. Byrum*, 638 S.E.2d 246, 252-53 (N.C. App. 2006), for the proposition that minimum contacts are established for a non-resident defendant as a result of the defendant's ownership interest in a company doing business in North Carolina.[5]  (Doc. 7 at 9).  The *Acosta* court held, in a two sentence analysis, that "[a]s [an] owner of a business in North Carolina," the defendant had "purposely availed himself within the state[,]" "invoked the protection of the laws" and "had minimum contacts with the state[.]"  638 S.E.2d at 253.  The Court does not find *Acosta* persuasive, because the opinion fails to provide a single citation supporting the proposition that simply owning a business with a presence in North Carolina automatically subjects the owner to personal jurisdiction within the state.  *See id.*  The Court refuses to find that personal jurisdiction over Defendants Lyvers and Pulver satisfies the first prong of the specific jurisdiction test merely because Defendants are owners and employees of ADS.

[4] Under the fiduciary shield doctrine, "the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction do not form the predicate for jurisdiction over him in his individual capacity."  *Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1055-56 (4th Cir. 1983).

[5] Plaintiff cites *Acosta* with respect to continuous and systematic contacts with North Carolina with respect to its general jurisdiction argument.  (Doc. 7 at 9-10).  In light of the Court's resolution of general jurisdiction, the Court will consider *Acosta* under the first prong of the specific personal jurisdiction discussion.

The act of owning a company that does business in North Carolina does not indicate to this Court that Lyvers and Pulver have subjected themselves to the sovereignty of this State in their individual capacities. *See Unspam Techs, Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013) (citing *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 883-84 (2011) (Kennedy, J., plurality opinion)).

The focal point of this dispute is the Agreement (Doc. 8-1 at 19-24) between the parties and the alleged breach thereof. While "it is undisputed that an isolated contract may be the basis for the exercise of personal jurisdiction over a nonresident defendant" "[t]he mere act, however, of entering into a contract with a resident of a forum state will not provide sufficient minimum contacts with that forum." *Tutterrow v. Leach*, 421 S.E.2d 816, 820 (N.C. App. 1992). Nonresident defendants must purposefully avail themselves of the privilege of conducting activities within the forum state in a manner that provides fair warning that their activities can subject them to jurisdiction in that state, in order to support a finding of minimum contacts. *Burger King*, 471 U.S. 462, 475-76 (1985).

With regards to the Agreement, it contains no provision requiring Defendants Lyvers and Pulver, individually, to perform services within North Carolina. (*See* Doc. 8-1 at 18-24). While Lyvers and Pulver did sign the Agreement in their individual capacities and benefitted by seeing their membership interests increased, ADS is the only party to the Agreement required to remit payments to Plaintiff and to perform services directed at North Carolina.[6] (*See id.*). Furthermore, the Agreement includes a forum selection clause and choice-of-law clause pointing to a different state. These facts taken together lessen the impact of any determination of whether the Agreement is a North Carolina or Kentucky contract, given that Lyvers and Pulver merely entered into a

---

[6] Under the Agreement, Plaintiff's membership interest would be redeemed by ADS. (Doc. 1-2 at 3; Doc. 8-1 at 19-20).

contract with a resident of North Carolina and performed no further acts under the Agreement. *Cf. Tutterrow*, 421 S.E.2d at 820 (finding under the facts in that case that neither the agreement nor the defendant's activities surrounding the contractual relationship provided sufficient minimum contacts under due process).

Although Defendant Lyvers moved away from North Carolina in either 2013 or 2014, two to three years before negotiations began on the Agreement, Defendant Pulver was present and owned property in North Carolina up until October 2016. (*See* Doc. 14 at 2). Therefore, Pulver maintained ongoing contacts in North Carolina through his presence in this state for the duration of the negotiations, payments, and alleged breach of the Agreement, which was a contract negotiated by Plaintiff, as well as Pulver, in North Carolina. (*See* Docs. 8 at 3; 14 at 2). Due to Pulver's presence in North Carolina during this period, it follows that his conduct relevant to the suit bears "such a connection to [North Carolina] that it is fair for [him] to defend [himself] in [this] state." *Tire Eng'g*, 682 F.3d at 301. Therefore, Defendant Pulver, unlike Defendant Lyvers, had "fair warning that [his] activities [would] subject [him] to jurisdiction in [North Carolina]." *Burger King*, 471 U.S. at 475-76. On the other hand, Defendant Lyvers' purposeful availment to North Carolina is minimal at best when considering Lyvers' obligations under the Agreement.

Accordingly, this Court concludes that Plaintiff did not show that Lyvers purposefully availed himself to North Carolina in a manner sufficient to satisfy the first prong of the three-part test. Thus, Plaintiff has failed to make a prima facie case for personal jurisdiction over Lyvers. The Court concludes, however, that Plaintiff has made a prima facie showing that Pulver purposefully availed himself to North Carolina through his presence in North Carolina during all relevant periods relating to the Agreement and the alleged breach giving rise to this litigation. Thus, the Court must consider the second prong of the three-part test with respect to Pulver.

The second prong of the specific jurisdiction test considers whether the plaintiff's claims arise out of the defendants' activities directed at the forum. *Tire Eng'g*, 682 F.3d at 303. The purpose of this prong is to make sure that a court is properly considering contacts with the forum that also provide the basis for the suit (relating to specific jurisdiction), and not the defendant's "general, more persistent, but unrelated contacts with the State" that would only provide a possible basis for general jurisdiction. *See ALS Scan*, 293 F.3d at 712. Plaintiff's pleadings and affidavit allege that Defendants' conduct directed at North Carolina—their actions surrounding the negotiation and alleged breach of the Agreement discussed *supra*—comprise the basis of Lyvers' and Pulver's contacts for purposes of specific jurisdiction. (*See* Docs. 1-2; 7, 8). Plaintiff has sufficiently shown that his claims arise out of Pulver's activities directed at the forum, namely through Pulver's presence here during all relevant periods relating to the Agreement and its alleged breach. (*See id.*). Although the Court need not consider application of the second prong to Lyvers, the Court concludes that Plaintiff has not sufficiently shown, for the reasons discussed during analysis of the first prong, that Defendant Lyvers' contacts with North Carolina relating to the Agreement subject him to specific jurisdiction. (*See id.* (noting that Lyvers was not present in the forum during the relevant periods and had no obligation of performance in North Carolina under the Agreement)).

"Th[e] [third] prong of the [specific jurisdiction] analysis 'ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to [its] opponent.'" *Tire Eng'g*, 682 F.3d at 303 (quoting *CFA Inst. V. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009)). In determining whether the exercise of personal jurisdiction over a defendant is constitutionally reasonable, the defendant's contacts are "considered in light of other factors to determine whether the assertion of personal jurisdiction

would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476. These factors include "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies." *Marx Indus., Inc. v. Chestnut Ridge Foam, Inc.*, 903 F. Supp. 2d 358, 365 (W.D.N.C. 2012) (citing *Burger King*, 471 U.S. at 475).

The factors set forth by the Supreme Court in *Burger King* weigh against dismissing Defendant Pulver from this action. The burden on Pulver to litigate in the forum would not be unconstitutionally great, because he lived in North Carolina until shortly before this filing of this action and he has hired local counsel in this case. *See CFA Institute*, 551 F.3d at 296; (Doc. 1-2). Furthermore, North Carolina does have an interest in redressing disputes involving its residents, and Plaintiff surely has an interest in obtaining relief. *See Burger King*, 471 U.S. at 474. This interest, however, is diminished due to several clauses in the Agreement. (Doc. 8-1 at 23-24). The Agreement between the parties is governed by the law of Indiana, contains a forum selection clause pointing to Indiana, and includes a clause stating that all parties agree to "accept service of process outside the State of Indiana as if service had been made in that state." (*Id.*). These provisions combine to indicate not only that Plaintiff was well aware of a jurisdiction in which all Defendants would be subject to personal jurisdiction, but also demonstrates that the State of Indiana has a significant interest in resolving disputes relating to the Agreement and, conversely, North Carolina's interest is certainly decreased. *See Republic Mortg. Ins. Co. v. Brightware, Inc.*, 35 F. Supp. 2d 482, 486 (M.D.N.C. 1999). Furthermore, the Indiana court would likely be more efficient at applying its own law than would this Court. *See id.*

Turning to Defendant Pulver individually, "litigation [would] not [be] so gravely difficult and inconvenient as to place [him] at a severe disadvantage in comparison to [Plaintiff]." *Tire Eng'g*, 682 F.3d at 303 (quoting *CFA Inst.*, 551 F.3d at 295). Pulver's contacts with the forum, when "considered in light of [the *Burger King*] factors[,]" indicates that "the assertion of personal jurisdiction [over him] would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476. As stated, *supra*, it would not be unduly burdensome for Pulver to litigate in North Carolina. Although the forum selection clause and choice-of-law clause diminish the interest of North Carolina, this state certainly has an interest in providing redress to Plaintiff against a party that purposefully availed himself to the forum, who lived in the forum at all times relevant to the facts giving rise to this action, and whose contacts form the basis of Plaintiff's claims. *See Burger King*, 471 U.S. at 474.

Accordingly, Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is **GRANTED** with respect to the claims against Lyvers and Lyvers is terminated as a defendant, but the motion is **DENIED** with respect to the claims against Pulver.

## IV.    VENUE

### A.    Defendants' Rule 12(b)(3) Motion to Dismiss

Fed. R. Civ. P. 12(b)(3) allows for dismissal only when venue is "improper." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 577-78 (2013). Whether venue is proper or "improper" is generally governed by 28 U.S.C. § 1391. *Id.* This provision provides that "[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine*, 134 S. Ct. at 577. Furthermore, even in the presence of a forum

selection clause, the § 1391 analysis does not change and "[a]s a result, a case filed in a district that falls within § 1391 may not be dismissed under . . . Rule 12(b)(3)." *Id.*

No party has argued that venue is improper under § 1391. Rather, Defendants argue that because Plaintiff filed a lawsuit in a venue other than that designated by the forum-selection clause, venue is improper. (Doc. 6 at 5-6). 28 U.S.C. § 1404(a), however, "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine*, 134 S. Ct. at 579. In this case, the Agreement specifically contemplates that jurisdiction "shall lie in the state *or federal courts* in Marion County, Indiana."[7] (Doc. 8-1 at 3). Therefore, Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3) is **DENIED** insofar as it seeks dismissal of this action.

   B.    Defendants' 28 U.S.C § 1404(a) Alternative Request to Transfer

          i.    *Standard of Review*

"In the typical case not involving a forum selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 134 S. Ct. at 581. The relevant private interest factors relating to the convenience of the parties include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of unwilling, witnesses; (3) the possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n.6 (1981). The public

---

[7] The doctrine of *forum non conveniens* and 28 U.S.C. § 1404(a) are proper procedural mechanisms in federal court for the enforcement of a forum selection clause. *Atl. Marine*, 134 S. Ct. at 579-80. Transfer pursuant to § 1404(a) is the prescribed enforcement mechanism of transfer when a forum selection clause "point[s] to a particular federal district." *Id.* at 579. However, dismissal pursuant to the doctrine of *forum non conveniens* is "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum . . . ." *Id.* at 580. Here, the forum selection clause points not only to state court but to a particular federal court. The Court, therefore, will consider Defendant's motion to transfer under § 1404(a).

interest factors, on the other hand, include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* Absent a valid mandatory forum selection clause, "a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *See Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

The § 1404 analysis changes, however, when a valid mandatory forum selection clause is present. The Supreme Court in *Atlantic Marine* held that the presence of a valid forum selection clause "requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine*, 134 S. Ct. at 581. First, the plaintiff's initial choice of forum is given no weight, and the burden shifts to the party defying the forum selection clause, for which the parties bargained, to establish that transfer to the forum stated in the clause is unwarranted. *Id.*

Second, the district court should not consider the private interests of the parties, and must deem the private interest factors to weigh entirely in favor of the forum selected in the forum selection clause. *Id.* at 582. This is because "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum . . . [they] agreed to . . . was clearly foreseeable at the time of contracting." *Id.* at 582 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972)). Consequentially, the district court should consider only the public interest factors. *Atl. Marine*, 134 S. Ct. at 582. However, the public interest factors rarely defeat a transfer motion when a mandatory forum selection clause exists. Thus, "the practical result [will be] that the forum-selection clause[] should control except in unusual cases." *Atl. Marine* 134 S. Ct. at 582.

Third, the original venue's choice-of-law rules will not be applied by the transferee venue. *Id.* at 582-83.

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id*. at 581 ("Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."). In *Atlantic Marine*, the United States Supreme Court emphasized that the "enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* Furthermore, the Court in *Atlantic Marine* found that a valid forum selection clause represents the parties' agreement as to the most proper forum. *Id.* Therefore, 28 U.S.C. § 1404(a) is the proper procedural mechanism in federal court for the enforcement of a forum selection clause when the clause "point[s] to a particular federal district." *Id.* at 579-81. Furthermore, a valid forum selection clause pointing to such a forum must be "given controlling weight in all but the most exceptional cases." *Id.* at 579.

ii.    *Analysis*

The first question the Court must address is whether the forum selection clause is permissive or mandatory. *Garrett v. MD Rehab, LLC*, 2016 WL 7478975, at *1 (W.D.N.C. Dec. 29, 2016). A mandatory forum selection clause gives the designated forum exclusive jurisdiction over any dispute, whereas a permissive clause confers jurisdiction over the parties within the designated forum, but does not necessarily grant exclusive jurisdiction. *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 436 (W.D.N.C. 2008). A forum selection clause is presumed permissive unless "some further language that indicates the parties' intent to make jurisdiction exclusive" is present in the forum selection clause. *Scotland Mem'l Hosp., Inc.,*

*v. Integrated Informatics, Inc.*, 2003 WL 151852, at *3-*4 (M.D.N.C. Jan. 8, 2003) (giving examples).

The language of the forum selection clause in the present case is as follows: "the Parties hereby agree that jurisdiction for the resolution of any disputes related to or arising out of the . . . alleged breach of . . . this Agreement shall lie in the state or federal courts of Marion County, Indiana." (Doc. 8-1 at 23). Plaintiff argues that the forum selection clause is permissive because it fails to exclude jurisdiction elsewhere through lack of appearance of the words "exclusive," "only," or "sole." (Doc. 7 at 14). Plaintiff cites *Bragg Cmtys., LLC v. Ill. Union Ins. Co.*, which states that "[p]arties *may* indicate a mandatory forum selection clause by using words such as 'only,' 'exclusive,' or 'sole' in referring to a particular jurisdiction." 2014 WL 6460595, at *1 (W.D.N.C. Nov. 17, 2014) (emphasis added); (*see also* Doc. 7 at 14). Defendants counter that the forum selection clause is mandatory, distinguishing the forum selection clause in *Bragg* from clauses more closely resembling the one in the Agreement. (Doc. 12). *See e.g.*, *Southern Farm Supply, Inc. v. Arctic Cat Sales, Inc.*, 2011 WL 2791247 (W.D.N.C. Jul. 14, 2011).

The forum selection clause in the Agreement more closely resembles the one at issue in *Southern Farm Supply*, which stated: "Any claim, action, or other dispute between the parties as to the terms of the Agreement . . . or as to any other matter arising out of the parties' relationship, *shall be* resolved by the State or Federal Courts of the State of Minnesota." 2011 WL 2791247, at *2 (finding that this language indicated specific intent for exclusive venue in Minnesota and that the forum selection clause was, therefore, mandatory) (emphasis added). Like the forum selection clause in *Southern Farm Supply*, the one included in the Agreement clearly expresses the parties' intent that "*jurisdiction for any* disputes related to or arising out of the breach or alleged breach of . . . [the] Agreement *shall lie* in the state or federal courts of Marion County, Indiana." (Doc. 8-1

at 23 (emphasis added)).  On the other hand, in *Bragg*, the forum selection clause stated that the parties "will submit to the jurisdiction of the State of New York and will comply with all requirements necessary to give such court jurisdiction."  2014 WL 6460595, at *1.  This provision is distinguishable from the one at hand because it "merely specifie[d that New York courts were] empowered to hear the litigation."  *Id*. at *2.  Because the forum selection clause in the Agreement, much like the one in *Southern Farm Supply*, contains language that "indicates specific intent for exclusive venue," the Court finds that the forum selection clause of the Agreement is mandatory. *Scotland Mem'l*, 2003 WL 151852, at *4; *see Giammattei v. Bertram Yacht, Inc.*, 2010 WL 2593612, at *5-*6 (W.D.N.C. June 23, 2010) (forum selection clause language "venue for any dispute shall lie in Miami-Dade County, Florida" "should be construed as mandatory"); *see also Home Prods. Int'l-N. Am., Inc. v. PeopleSoft USA, Inc.*, 201 F.R.D. 42, 46 (D. Mass. 2001) ("venue shall lie" implies exclusivity); *Mid Atl. Paper, LLC v. Scott Cnty. Tobacco Warehouses, Inc.*, 2004 WL 326710, at *1-*2 (W.D. Va. Feb. 23, 2004) ("venue . . . shall lie with Virginia courts in Washington County"; dismissing without prejudice for lack of venue in federal court). *Cf. Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (concluding that the clause "jurisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado," was mandatory and required any breach of contract action to be litigated in the specified court).  Here, in context, "shall lie" connotes exclusivity.  "To interpret the forum selection clause otherwise would render the mutually negotiated and agreed upon provisions in the Agreement meaningless."  *Garrett v. MD Rehab, LLC*, 2016 WL 7478975, at *2.

Plaintiff further argues that the forum selection clause is "limited and does not apply to [his] claim for fraudulent inducement" because that claim does not relate to or arise out of a breach or alleged breach of the Agreement.  (Doc. 7 at 15).  Plaintiff cites no case law or relevant authority

in an attempt to persuade the Court of this argument but does reference language in the clause itself. (*See* Doc. 7 at 16-17). Plaintiff expressly brings a breach of contract claim with respect to the Agreement. (Doc. 1-2 at 3-4). That claim is obviously one that arises out of an alleged breach of the Agreement (and is certainly related to such an alleged breach). Plaintiff cites no authority holding that a valid mandatory forum selection clause in a case where a plaintiff's claim falls squarely under the clause can be nullified by also asserting a claim that plaintiff argues does not fall under the clause. In determining whether to enforce a forum selection clause, "it is the forum selection clause itself that must be the subject of the fraud, and not the whole agreement." *Mid Atl. Paper*, 2004 WL 326710, at *1-*2 (citing *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998) ("Allegations that the entire contract was procured as the result of fraud or overreaching are inapposite to our [forum-selection clause] enforceability determination, which must . . . precede any analysis of the merits [of the contract's validity]." (quotation marks omitted; brackets in original))). The question remains whether the fraudulent inducement claim could or should be retained should the Court conclude the breach of contract claim should be transferred to the Southern District of Indiana. Plaintiff has not moved to sever the claims and Section 1404(a) references "transfer of any civil action" to another district or division. 28 U.S.C. § 1404(a).

Further, the Court finds that the fraudulent inducement claim itself falls within the scope of the Agreement's forum selection clause. In this case, the clause provides broadly that "*any disputes related to* or arising out of the breach or an alleged breach of any of the provisions contained in this Agreement" shall be determined in the state or federal court of Marion County, Indiana. (Doc. 1-2 at 23). The language "related to" in forum selection clauses is synonymous to other embracing language such as "with respect to," "in connection with," and "associated with." *Cameron v. X-Ray Professional Assoc.*, 2017 WL 680388, at *3 (D.N.H. Feb. 21, 2017); *see, e.g.*,

*Sagittarius Sporting Goods Co., Ltd. v. LG Sourcing, Inc.*, 162 F. Supp. 3d 531, 539 (D.S.C. 2016) (addressing contract-related tort claims). Here, not only is the forum selection clause language broad, the promised payments forming Plaintiff's breach of contract claim are the same promises asserted in Plaintiff's fraudulent inducement claim. (*Compare* Doc. 1-2 (Complaint) ¶¶ 19 (failing to pay installments), 20 (failing to pay commissions), *with* Doc. 1-2 (Complaint) ¶¶ 26 (ADS entered into the Agreement with no intention of paying Plaintiff), 27 (Lyvers and Pulver had no intention of performing and paying), 28 (Lyvers and Pulver misrepresented that ADS would pay Plaintiff), 29 (ADS misrepresented that it would pay Plaintiff), 30 (Defendants misrepresented that ADS would pay Plaintiff), 31 (Defendants misrepresented ADS would pay Plaintiff)). In light of the foregoing, the Court concludes that the fraudulent inducement claim falls within the forum selection clause.

Second, the Court must determine whether the forum selection clause is valid and enforceable. A forum selection clause is presumed valid and should be enforced unless there is a "clear showing" that it is unreasonable under the circumstances. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996); *The Bremen*, 407 U.S. at 10. A forum selection clause is unreasonable if "(1) [its] formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state." *Allen*, 94 F.3d at 928. It has been held that the court balances the four *Allen* factors to determine whether a forum selection clause is unreasonable. *Dunn v. Now Disc, Inc.*, 2010 WL 11478802, at *2 (E.D.N.C. Sept. 20, 2010). In any event, as discussed below,

Plaintiff has failed to show that any of the four factors provided by Allen support a finding of unreasonableness in this case.

Under the first *Allen* factor, Plaintiff alleges that the forum selection clause was induced by fraud and asserts that Defendants inserted the clause in an attempt to "discourage [Plaintiff] from pursuing claims which they knew would arise once payments ceased." (Doc. 7 at 16-17). Defendants counter and argue that there is no mention in Plaintiff's complaint that he was defrauded into agreeing to the forum selection clause, and that the agreement expressly provides that there were no other representations among the parties concerning the Agreement. (Docs. 8-1 at 23; 12 at 10-11); *see Mid Atl. Paper*, 2004 WL 326710, at *1-*2 ("[I]t is the forum selection clause itself that must be the subject of the fraud, and not the whole agreement."). Plaintiff signed the Agreement, which included a clause certifying that Plaintiff had "read [the] Agreement and underst[ood] its terms." *Id.* Given that Plaintiff is a sophisticated businessperson who read and signed the Agreement, consented to its terms, and is only just now arguing that the forum selection clause itself was inserted via fraud, the Court can find no logical reason to conclude that the clause's inclusion was procured through fraud for purposes of the first *Allen* factor. *Cf. Leventis v. AT&T Adver. Solutions*, 2012 WL 931081, at *5-*7 (D.S.C. Mar. 19, 2012) (finding that a plaintiff who certified that he read an entire contract could not "reasonably deny that he was on notice that one of [the] terms [of the contract] related to a venue limitation or forum selection clause[,]" and determining that "any claim that the forum selection clause was procured by fraud therefore, fail[ed]."). Accordingly, the Court finds that Plaintiff's argument under the first *Allen* factor fails at this juncture.[8]

---

[8] Plaintiff makes no allegations of inducement by overreaching. Therefore, no analysis is required as to whether Defendants overreached, or took advantage of Plaintiff through use of unfair negotiation practices. *See S. Farm Supply*, 2011 WL 2791247, at *3.

Under the second *Allen* factor, Plaintiff argues that he would be deprived of his day in court because of the grave inconvenience and unfairness of the selected forum. (Doc. 7 at 17). In support of this argument, Plaintiff asserts that none of the individual parties to this action reside in Indiana. (*Id.*). The Court fails to see how transferring this action to a contractually agreed upon location, one in which Defendant ADS is incorporated and thereby "at home," would no longer allow plaintiff to have his day in court. (*See* Doc. 1-2). Plaintiff further argues that "any claims of the Defendants that [Plaintiff] breached the [A]greement would necessarily compel proof within North Carolina" and that Plaintiff would have to "elicit testimony and documentation within North Carolina." (Doc. 7 at 17). Plaintiff cites no authority to persuade the Court of his argument and the Court notes that federal courts in North Carolina have upheld far greater procedural and logistical inconveniences. *See, e.g.*, *Turfworthy, LLC v. Dr. Karl Wetekam & Co.*, 26 F. Supp. 3d 496, 506-07 (M.D.N.C. 2014) (dismissing action in favor of venue in Germany). Accordingly, the Court does not find that Plaintiff would be deprived of his day in court by having the case transferred to the proper federal court in Indiana.[9]

Under the fourth *Allen* factor, Plaintiff argues that enforcement of the forum selection clause would contravene "a strong public policy of North Carolina." (Doc. 7 at 17-18). Plaintiff cites to N.C. Gen. Stat. § 22B-3 for the proposition that any provision in a contract entered into in North Carolina that requires the dispute to be heard in another state is against public policy and void. (*Id.*). Defendants counter that even if the Agreement were entered into in North Carolina, federal case law indicates that a forum selection clause in violation of public policy "is not in and of itself sufficient to render the clause unenforceable." (Doc. 6 at 9). The Court finds that N.C.

---

[9] Plaintiff fails to address the third *Allen* factor—that he would be deprived of a remedy—except, perhaps, indirectly through his argument under the second factor that he would be denied his day in court. (*See generally* Doc. 7). Therefore, the Court will not address this factor separately.

Gen. Stat. § 22B-3 does not render the forum selection clause unenforceable in this case. *See e.g.*, *Allen*, 94 F.3d at 928; *Peltier v. Mathis*, 2016 WL 4386091, at *5 (W.D.N.C. Jun. 23, 2016) (M.J.) ("The enactment of Section 22B-3, however, does not otherwise render the freely negotiated forum selection clause unenforceable in this Court."), *report and recommendation adopted sub nom.*, 2016 WL 4411510 (W.D.N.C. Aug. 16, 2016); *WW Healthcare Consultants, LLC v. Lintech, LLC*, 2014 WL 3547373, at *3 (W.D.N.C. July 17, 2014) ("[I]n *Allen*, the Fourth Circuit enforced a forum selection clause, although it violated public policy. . . . After *Stewart* [*Organization, Inc. v. Rioch Corp.*, 487 U.S. 22 (1988)], the fact that the forum selection clause violated the public policy of North Carolina is not by and of itself sufficient to render the clause unreasonable" (quoting *Scholl v. Sagon RV Supercenter, LLC*, 249 F.R.D. 230, 242 (W.D.N.C. 2008) (citing *James C. Greene Co. v. Great Am. E&S Ins. Co.*, 321 F. Supp. 2d 717, 721 (E.D.N.C. 2004)))). Accordingly, the forum selection clause is not void and unenforceable as against North Carolina public policy under *Allen*.

Because Plaintiff has failed to show that any of the four *Allen* factors, singly or together, warrant a finding of unreasonableness, this Court finds the forum selection clause valid and enforceable. In light of the Court's finding that the forum selection clause is mandatory, valid, and enforceable, Plaintiff's choice of forum is given no weight. *Atl. Marine*, 134 S. Ct. at 581.

Plaintiff argues that the Court should consider both the public and private interest factors listed in *Piper Aircraft*. 454 U.S. at 241 n.6; (Doc. 7 at 18-20). Because this action includes a mandatory forum selection clause, however, the Court will only consider the public interest factors. *Atl. Marine*, 134 S. Ct. at 582. These factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law

that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.  *Piper Aircraft*, 454 U.S. at 241 n.6.

Plaintiff concedes that factor one is neutral and fails to provide an argument on factor five. (Doc. 7 at 18-20).  Plaintiff argues that factors two through four weigh in favor of North Carolina being the forum because (1) this Court would experience no difficulties in applying Indiana law; (2) none of the actions or omissions of the parties at issue in this action were conducted in Indiana; and (3) the negotiations and formation of the Agreement took place in North Carolina.  (*Id.*). Defendants argue that ADS has more of an interest in having its controversies decided at home in Indiana due to the forum selection clause, and reassert their argument that a court sitting in Indiana has more experience and expertise in applying the Indiana law required by the choice-of-law clause in the Agreement.  (Doc. 6 at 11-12).

This Court finds that the *Piper Aircraft* public interest factors lean in favor of transferring this action.  This Court finds that factor one is neutral, due to the concession of the parties, and that factors two through four weigh in favor of transfer.  The U.S. District Court for the Southern District of Indiana certainly has more experience and expertise in applying Indiana law, as well as an interest in having the trial of a diversity case in the forum that is at home with the law that must govern the action.  *See AC Controls Co. v. Pomeroy Comput. Res., Inc.*, 284 F. Supp. 2d 357, 364 (W.D.N.C. 2003).  Whatever local interest Plaintiff has in having the controversy tried in North Carolina is substantially diminished by the presence of the valid and mandatory forum selection clause.  *Atl. Marine*, 134 S. Ct. at 583 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled

expectations . . . . In all but the most unusual cases . . . the 'interest of justice' is served by holding parties to their bargain.").

The Court grants Defendants' alternative request of transfer found in the Motion to Dismiss. Therefore, Defendants' Motion to Transfer (Doc. 5) pursuant to 28 U.S.C. § 1404(a) is **GRANTED** and this action is **TRANSFERRED** to the United States District Court for the Southern District of Indiana.

## V.     DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1)     Plaintiff's Motion for Evidentiary Hearing or Limited Discovery (Doc. 9) is **DENIED**;

(2)     Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. 5) is **GRANTED IN PART** as to Defendant Tim Lyvers and claims against him are **DISMISSED WITHOUT PREJUDICE**, and **DENIED IN PART** as to Defendant Todd Pulver;

(3)     Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3) (Doc. 5) is **DENIED**;

(4)     Defendants' Motion, in the alternative, to Transfer pursuant to 28 U.S.C. § 1404(a) (Doc. 5) is **GRANTED**;

(5)     The Clerk is **DIRECTED** to terminate Tim Lyvers as a Defendant in this action; and

(6)     As to Plaintiff Steven K. Brown, Defendant Advanced Digital Solutions, LLC, and Defendant Todd Pulver, this matter **IS TRANSFERRED TO THE UNITED**

**STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA**.

Signed: August 31, 2017

Richard L. Voorhees
United States District Judge